**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2688
_____

UNITED STATES OF AMERICA

v.

CLIFFORD WHITE,
                                   Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 07-cr-00365-001)
District Judge:  Honorable Stewart Dalzell
_____

Submitted Under Third Circuit LAR 34.1(a)
April 28, 2011
_____

Before: BARRY, HARDIMAN and TASHIMA,[*] Circuit Judges

(Opinion Filed:  May 2, 2011)
_____

OPINION
_____

BARRY, Circuit Judge

        Clifford White was indicted in June 2007 for various drug offenses in violation of

_____

    [*] Honorable A. Wallace Tashima, Senior Judge of the United States Court of Appeals
for the Ninth Circuit, sitting by designation.

21 U.S.C. § 841(a)(1), (b)(1)(A), & (b)(1)(B), and 21 U.S.C. § 846. Prior to trial, White filed a motion to suppress evidence that officers seized pursuant to both a *Terry* stop and a warrant secured on the basis of that stop. The District Court denied the motion after holding a hearing. White was then convicted by a jury, and a statutory mandatory minimum sentence of 240 months' imprisonment was imposed. He appeals, arguing that the Court erred in denying his motion to suppress. We will affirm.

## I. Background

Because we write primarily for the parties, who are familiar with the background of this case, our discussion of the facts found by the District Court will be brief.

Two Philadelphia plainclothes narcotics officers, James Cullen and Thomas Tolstoy, were patrolling a shopping center parking lot in an unmarked car in the morning of August 30, 2006 when they observed White and Wayne Briggs entering a nearby spillover lot in their respective cars. White pulled up behind Briggs and signaled to him with hand motions, after which Briggs followed White down a hill to an adjacent commercial storage facility. The officers, observing the men from a vantage point above the facility, were suspicious, and decided to investigate.

Upon entering the storage facility, White and Briggs parked their cars outside a storage unit, Briggs looked around nervously, and White unlocked the unit and emerged shortly thereafter with a black plastic bag which he handed to Briggs, who again looked around nervously. As the men talked, the officers—who by now suspected they had just

observed a drug transaction—proceeded to the facility, hoping to get a look at the cars'

license plate numbers. An employee admitted them to the lot, and the officers drove by as

White and Briggs stood in front of the unit talking, with Briggs still holding the black

bag. When they caught sight of the officers, the men looked alarmed, at which point the

officers circled back, White dropped the key and lock as he tried to close the storage unit,

and Briggs placed the bag on top of his car as he got into it.

The officers identified themselves, told the men to stop, and Officer Cullen asked

Briggs what was going on and whether the men had guns. Cullen touched the bag on

Briggs's car's roof and felt what he immediately believed to be drugs. Upon examining

the contents of the bag, his suspicion was borne out: inside were clear plastic bags of

what appeared to be crack and powder cocaine. Both men were arrested and detained,

and the officers called for backup. After a K-9 dog reacted positively for narcotics in

both the storage locker and in Briggs's car, the officers secured a search warrant for both,

from which additional quantities of crack, powder, and other evidence were seized. In

total, 460 grams of crack and 1,074 grams of powder were seized.

Prior to his trial, White filed a motion to suppress.[1] Claiming that the officers did

not have reasonable suspicion to conduct an investigatory stop at the storage facility, he

argued that all the seized evidence was the fruit of an illegal stop, requiring suppression.

Officer Cullen—with seven years' experience in over 2,000 drug investigations—testified

---

[1] Briggs pled guilty to the crimes with which he was charged, was not a party to the motion to suppress, and, accordingly, is not a party to this appeal.

that: (1) the men's behavior in the vacant lot first aroused the officers' suspicion; (2) following the men to the storage facility was a means to further investigate by getting their cars' license plate numbers, to run a check; (3) prior experience told him that storage facilities often were used for illegal activity; and (4) the men's nervous behavior and the circumstances of the hand-off of the black bag confirmed the officers' suspicions that a drug transaction had occurred, leading them to conduct a stop pursuant to *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

In denying White's motion to suppress, the District Court found Officer Cullen's testimony to be credible, and found that, under the applicable totality of the circumstances test, the officers had reasonable suspicion to conduct the stop. Because discovery of the drugs in the bag was permissible within the scope of that stop, probable cause also existed to arrest the men, and then to search the storage unit and vehicle pursuant to the warrant that they secured.[2] White's conviction and sentencing, and now this appeal, followed.

## II. Discussion

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. "We review the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise plenary review of the District Court's application of the law to those facts." *United States*

---

[2] White initially suggested that the seizure of the drugs from the bag was illegal, but he did not press that argument before the District Court. In any event, Officer Cullen's actions fall within the "plain feel" doctrine as set forth by *Minnesota v. Dickerson*, 508 U.S. 366 (1993).

*v. King*, 604 F.3d 125, 134 (3d Cir. 2010) (alterations and quotation omitted). Where, as here, a defendant challenges the denial of a motion to suppress and, in holding that a stop was proper, the District Court had credited an officer's testimony, "[i]t is not for us to weigh the evidence or to determine the credibility of witnesses." *United States v. Petersen*, 622 F.3d 196, 201 (3d Cir. 2010) (quotation omitted).

The District Court did not err in concluding that Officers Cullen and Tolstoy had a reasonable, articulable suspicion to believe that White was involved in criminal activity: as experienced officers on narcotics patrol, they recognized suspicious behavior in the form of a vacant lot meet-up, hand signals, and travel to a location often used for criminal purposes. Acting on that suspicion, they sought more information (here, license plate numbers), until the facts (here, nervous behavior and the hand-off of a mysterious bag) suggested that a drug transaction had occurred. "[W]e accord deference to an officer's judgment of whether criminal activity is taking place." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006). There is ample reason to accord deference on these facts, which the Court comprehensively summarized, based on the experience of an officer "whose testimony [the Court] credit[ed]." App. at 131.

We also note that in determining that the officers' stop of White was permissible under *Terry*, one must look at whether, under all of the circumstances—"including … [their] knowledge, experience, and common sense judgments about human behavior"— reasonably prudent officers would have been warranted in believing that their safety was

5

in danger. *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002). White argues that his and Briggs's actions were capable of innocent explanation, such that the officers' suspicion was *not* the reasonable sum of the totality of the circumstances. But this argument misses the mark, inasmuch as reasonable suspicion *may* arise from "acts capable of innocent explanation," *United States v. Valentine*, 232 F.3d 350, 356 (3d Cir. 2000), and inasmuch as the Supreme Court has emphasized that the *Terry* analysis turns *precisely on a totality* of the circumstances—not on a "divide-and-conquer analysis" of discrete bits of data. *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

Here, the officers inquired whether the men had guns, having just observed their nervous behavior and transfer of the black bag. We have recognized that one of the reasons why "we accord deference to an officer's judgment [is because] … whether an officer has reasonable suspicion to warrant a stop … is often an *imprecise* judgment." *Ramos*, 443 F.3d at 308 (quotation omitted; emphasis added). It was reasonable for Officer Cullen to ask whether the men were armed, to touch the bag on top of Briggs's car, and, upon feeling objects that his experience and judgment told him were contraband, to open it. Everything from this point on, including the subsequent search of the storage unit and of Briggs's car (executed pursuant to a warrant in a manner that the District Court found to be "exemplary," App. at 132), were textbook applications of *Terry* and its progeny. *See, e.g.*, *United States v. Yamba*, 506 F.3d 251, 259 (3d Cir. 2007) (observing, in adopting *Dickerson*'s "plain feel" doctrine, that "a *Terry* search cannot purposely be

6

used to discover contraband, but it is permissible that contraband be confiscated if spontaneously discovered during a properly executed *Terry* search.").

## III. Conclusion

For the foregoing reasons, and because we find White's remaining arguments to be without merit, we will affirm the judgment of the District Court.